**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

DIANE DURHAM,
*on behalf of*
FRANK E. BOTHWELL II,
*a minor,*

    Plaintiff,

v.                                                           CASE NO. 01-CV-10258

COMMISSIONER OF                          DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,                            MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff's minor child is no longer entitled to Supplemental Security Income child's benefits, as his disability ceased September 1, 1997.  Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at:  http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf.  This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income (SSI) child's benefits made on behalf of her then-minor son. The Report and Recommendation entered on December 15, 2008, was vacated by U.S. District Judge Lawson on January 9, 2009, and the matter referred back to the undersigned Magistrate Judge based on Defendant's Notice of improper service which specifically noted that Defendant had mailed its motion for summary judgment to an address that was not Plaintiff's current residence. (Dkts. 40, 41.) An amended scheduling Order was entered which provided Plaintiff with an opportunity to reply to Defendant's motion by January 21, 2009. As of the date of this Report, no reply has been filed. Therefore, this matter is currently before the Court on cross-motions for summary judgment. (Dkt. 33, 37.)

In October 1991, Diane Durham filed the instant claim for childhood disability benefits on behalf of her son, Frank E. Bothwell II, who was born in 1987. (Tr. at 54-66.) The claim was granted in April 1992. (Tr. at 67.) The Commissioner's representatives determined that Frank was disabled due to attention deficit hyperactivity disorder (ADHD) and vision loss, and benefits were awarded commencing October 1, 1991. (*Id.*) In May and September 1997, as a result of redefinition of childhood disability, the Commissioner reviewed Frank's case, and he and his mother received notice that Frank was determined to be no longer disabled, and that benefits would cease November 1, 1997. (Tr. at 68-72, 131-134.) Plaintiff requested reconsideration. (Tr. at 130.) In March 1998, Plaintiff and her son appeared before a Disability Hearing Officer who issued a decision upholding the original administrative termination of Frank's benefits. (Tr. at 170-74.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 177.) On April 5, 1999, Plaintiff and her son appeared before ALJ John Wilder, who considered the case *de novo*. In a decision dated May 25, 1999, the ALJ found that Plaintiff was not disabled since September 1, 1997, again upholding the previous administrative determinations. (Tr. at 11-20.) Plaintiff requested a review of this decision on July 1, 1999. (Tr. at 9-10.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 25, 2001, when, after the review of additional exhibits[2] (Tr. at 242-62), the Appeals Council denied Plaintiff's request for review. (Tr. at 5-6.)

On July 19, 2001, Plaintiff filed the instant *pro se* action seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.) In June 2002, the Commissioner moved to remand this case for further administrative proceedings. (Dkt. at 13.) In a Report and Recommendation on that motion, I noted that the *pro se* Plaintiff in her response to the motion had "no objection to the continuing of the search for the missing tape and files . . . ." (Dkt. 15, 18.) Judge Lawson accepted this recommendation on September 24, 2002, and issued an Order remanding the case pursuant to Sentence Six of 42 U.S.C. § 405(g). (Dkt. at 20.) The next day, he issued a Judgment reversing the findings of the Commissioner and remanding the case for further administrative proceedings.[3] (Dkt. at 21.)

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

[3]I note that the Clerk docketed this pleading as a Judgment for Plaintiff.

Five years and seven months later[4], the Commissioner moved to reopen this case, noting that the tape of the original hearing had been located and the transcript had been reconstructed. (Dkt. 22.)  This motion was granted (Dkt. 24), the Commissioner filed an Answer (Dkt. 25), the administrative transcript was filed (Dkt. 27), and the instant motions followed.

### B. Standard of Review

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam).  The Commissioner is charged with finding the facts relevant to an application for disability benefits.  A federal court "may not try the case *de novo*. . . ."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).  The scope of the court's review is limited to an examination of the record only.  *Brainard,* 889 F.2d at 681.  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 681 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S.

---

[4] The Commissioner's description of the proceedings on remand is found at pages 5 and 6 of the Commissioner's brief.  (Dkt. 37.)

197, 229, 59 S. Ct. 206, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

    **C.**     **Governing Law**

        **1.**     **The Social Security Act**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S.

521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

**2.      Childhood Disability**

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382(a)(3)(C)(I). To determine whether a child's impairment results in marked and severe limitations, SSA regulations[5] prescribe a three step sequential evaluation process:

---

[5] For a history of these regulations, *see Molina v. Barnhart,* No. 00-CIV-9522(DC), 2002 WL 377529 (S.D.N.Y. March 11, 2002).

    1.    If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.

    2.    If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.

    3.    If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a).

In the third step of this analysis – namely, whether a child's impairment(s) functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). If the child's impairments result in "marked" limitations in two areas, or an "extreme" limitation in one area, the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. § 416.926a(d). A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is one that "interferes *very* seriously with [a child's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (italics added). "Marked" and "extreme" limitations in a given area can be established by standardized test scores. A "marked" limitation is shown by a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that area, and the child's day-to-day functioning is consistent with that score. An "extreme" limitation is shown by a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning, and the child's day-to-day functioning

7

is consistent with that score. 20 C.F.R. §§ 416.926a(e)(2)(iii), 416.926a(e)(3)(iii). Test scores are not conclusive, and the bulk of 20 C.F.R. § 416.926a is devoted to "general descriptions of each domain" against which a claimant's functioning may be compared.

### 3.     Termination of Benefits

An individual's entitlement to benefits under the Social Security Act will be reviewed periodically for continued entitlement to benefits. 20 C.F.R. § 416.994(a). In those cases, the central question is whether the claimant's medical impairments have improved. 42 U.S.C. § 423(f)(1). Improvement is measured from "the most recent favorable decision" that the claimant was disabled. 20 C.F.R. § 416.994(b)(1)(i). There is no presumption of continuing disability. *Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286-87 n.1 (6th Cir. 1994). Instead, the Commissioner applies the procedures that are outlined in 20 C.F.R. §§ 404.1594 and 416.994 to determine whether a claimant's disability has ended and that she is now able to work.

The implementing regulations define a medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." *Id.* A medical improvement is related to an individual's disability only "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic . . . activities[.]" 20 C.F.R. § 404.1594(b)(3). *See also Nierzwick v. Commissioner of Social Security,* 7 Fed. App'x 358 (6th Cir. 2001).

### D.     ALJ's Findings

8

The ALJ applied the Commissioner's child disability analysis to this claim and found that Frank had not engaged in substantial gainful activity. (Tr. at 19.) At step two, the ALJ found that Frank's impairments were "severe." (*Id.*) At step three, the ALJ found that Frank's combination of impairments did not meet or equal the listings in the regulations. (Tr. at 19-20.) More specifically, the ALJ found that Plaintiff had a less than marked limitation in social functioning, no limitations in motor functioning, cognitive/communicative development, concentration, persistence, pace or personal attainment. (*Id.*)

### E.   Review of ALJ's Determination

#### 1.   Legal Standards

After review of the record, I suggest that the ALJ utilized the proper legal standard[6] in his analysis of Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2.   Substantial Evidence

Plaintiff in effect argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

X-rays of Frank's ribs and lungs in February 1997 were normal. (Tr. at 184.) In April 1997, a Doctor at Westland Clinic reported that Frank "was seen in our office today and is able

---

[6]Since the time of this decision, the Commissioner has revised the standards for childhood disability contained in 20 C.F.R. § 416.926a(a). The standards in existence at the time of the decision under review control.

9

[*sic*] for physical activity." (Tr. at 183.) Vision tests in July 1997 showed that Frank's vision was correctable to 20/40 in the right eye and 20/20 in the left eye. (Tr. at 199.) Frank's ocular discs were found to be clear and macula of his eyes and blood vessels were described as normal. (*Id.*)

In mid August 1997, Frank underwent a psychological examination conducted at the request of the Disability Determination Service ("DDS") by Lee Koski, M.S., and Hugh D. Bray, Ph.D. Frank and his mother were interviewed, and Frank completed a series of psychological tests. When asked about Frank's eyesight, his mother stated that it was no longer a problem in his new school. (Tr. at 202-03.) The examiners reported that Frank gave organized and spontaneous responses, and was "quite capable of expressing wants and needs verbally." (Tr. at 203.) Frank demonstrated a "positive sense of self esteem." (*Id.*) He was characterized as pleasant and 'autonomous." (*Id.*) IQ testing placed Frank in the high average category. (Tr. at 204.) After summarizing the results of the other tests, the examiners stated:

> There is no evidence of learning disability determined from this evaluation. He is not taking any medications at this time. He is not seeing a doctor on a regular basis. His highest score is in short term memory, which would be a deficit if he had attention deficit disorder or attention deficit hyperactivity disorder. There seems to be no acute visual problem, based on this evaluation.
>
> It is significant to note that many of the behaviors were alleged by the mother and not evidenced during this evaluation. This examiner places more credence in the behaviors and self report of the claimant than he does on the mother.

(Tr. at 204.) No diagnoses of psychological ailments were made. (*Id.*)

In early November 1997, Frank's fourth grade teacher reported that Frank was attending regular classes and functioning at grade level. (Tr. at 149.) She reported no speech problems. (*Id.*) With regard to his vision, she stated, "Frank wears glasses with strong lenses, but with his glasses on he has no problem seeing the chalkboard." (*Id.*) She answered "no" to a question about problems with social relationships, stating that "[h]e can sometimes be obnoxious, but no more

10

than is normal." (*Id.*) She stated that he had been twice disciplined, and sometimes misses part of recess to complete work he missed. (Tr. at 150.) As to his attention span, she stated that "[o]nce or twice a day [she] may have to re-focus Frank's attention to the task at hand, since he likes to let his mind 'wander' to some other classes' lessons. (My classroom is grades 4, 5, and 6)." (*Id.*) She reported no problems with hygiene, self-care or accommodating changes in routine. (*Id.*) As to Frank's ability to understand and complete assignments, she stated, "The times Frank has not completed his homework are the results of simply doing something else at home and inadequate parental interest and supervision." (*Id.*) In a letter dated three days later, the principal of Frank's school stated:

> Frank shows a normal or above normal intelligence level, but his inability to stay focused and his vision make him slower and less productive.
>
> I do believe that lack of proper rest and nurturing in the home contribute to some of his difficulties.
>
> Our school is small and our teachers are able to work closely with individual students as needed. That seems to have been a real benefit to Frank. We have seen quite an improvement since he came to the Bible Missionary Academy.

(Tr. at 215.)

Although there is some evidence in this record to the contrary (Tr. at 171, 214), I conclude that the evidence summarized above, particularly the unequivocal conclusions of the Commissioner's consulting psychologists, constitutes substantial evidentiary support for the ALJ's finding that Frank's condition had improved such that the continuation of SSI child benefits was no longer appropriate. I also suggest that the Commissioner is correct in his statement that the hearing mentioned by Plaintiff in her one-page motion is of no moment, as it has no bearing on the administrative decision presently before this Court. Accordingly, I suggest that the ALJ's decision, which ultimately became the final decision of the Commissioner, is within that "zone of

11

choice within which decisionmakers may go either way without interference from the courts." *Mullen*, 800 F.2d at 545.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

          s/ *Charles E. Binder*
          CHARLES E. BINDER
Dated: February 3, 2009          United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on William L. Woodard and the Commissioner of Social Security, served on Diane Durham f/b/o Frank Bothwell, II via first class mail at 29711 Steinhauer St., Inkster, MI 48141-3419, and served on District Judge Lawson in the traditional manner.


Date:  February 3, 2009			By	   s/Patricia T. Morris			
					Law Clerk to Magistrate Judge Binder

13